IN THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONNIE GREEN<br>1105 RAVENSWORTH COURT<br>ACCOKEEK, MARYLAND 20607<br><br>　　Plaintiff,<br><br>v.<br><br>DAVID BARNHARDT, SECRETARY<br>UNITED STATES DEPARTMENT<br>OF INTERIOR<br>1849 C STREET, NW<br>WASHINGTON, DC 20240<br><br>　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:　Civil Action No.<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff, Connie Green, finance specialist, United State Park Police, by and through her undersigned counsel, for her Complaint for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.§621, et. seq. and for retaliation in violation of Title VII of the Civil Rights Act of 1964, hereby states as follows:

## PARTIES

1.　Plaintiff, Connie Green, is and was at all times relevant hereto an employee of the U.S. Department of Interior as Finance Specialist for the United State Park Police ("USPP").

2.　Defendant, David Barnhardt, in his official capacity is the Secretary of the U.S. Department of Interior, is a federal agency located in Washington, D.C.

## JURISDICTION AND VENUE

3.　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., 42 U.S.C. § 2000(e) et. seq.

4. At all times relevant to this case, Defendant has been an employer and has engaged in an industry affecting commerce, has employed fifteen or more employees, and otherwise has been an employer, within the meaning of 42 U.S.C. Sec 2000(b).

5. Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

## PROCEDURAL BACKGROUND

6. In or about January, 2020, Plaintiff made initial contact with her EEO counselor.

7. Plaintiff was interviewed by the EEO counselor on or about January 21, 2020.

8. On or about February 20, 2020, Plaintiff received a Notice of Final Counseling and she signed and returned the receipt for that notice.

9. However, on or about February 23, 2020, Plaintiff's EEO counsel followed up with additional questions from Plaintiff's interview and Plaintiff provided answers on February 24, 2020.

10. Plaintiff returned her receipt of counseling notification on February 20, 2020.

11. The Agency issued a Report of Counseling on or about June 19, 2020, but has taken no further action.

12. More than 180 days has passed and the Defendant has not completed its investigation.

## FACTS

13. Plaintiff is at all times relevant hereto a federal employee who has worked for the United State Park Police since 1985. She had been in her current role of Financial Specialist since 2005.

14. Plaintiff, Connie Green is an adult resident of the State of Maryland.

15. Plaintiff was born in 1964 and is over the age of 40.

16. Plaintiff's colleagues in the Finance Section, Lisa Taylor and Christina Myers, were under 40 at the time in question, and Carolyn Tyler was over 40. They are all younger than Plaintiff.

17. Plaintiff's husband, Craigory Green, is a Black male and is also employed by the USPP.

18. In October, 2015, Craigory Green filed a complaint against the USPP for discrimination related to promotion based on color and race.

19. That case was settled on August 16, 2016, with Craigory Green receiving a promotion to Captain and remuneration for back pay.

20. As an employee of the USPP, Plaintiff's husband was provided a cell phone for work use.

21. Plaintiff received calls on her husband's work phone upon until mid-spring 2020 (COVID).

22. Plaintiff was advised prior by her supervisor (s) that she would not receive a work cell phone because the USPP will be conducting an audit on all cell phones. The cell phone audit never occurred. In the Fall 0f 2019, a white female assigned to the Finance Office in New York Field Office was given a work cell phone.

23. Despite Plaintiff's 2018 request for a work cell phone in order to carry out her duties, at no time in her employment with USPP was Plaintiff provided a phone. This is despite the fact that due to the responsibilities of Plaintiff's position, Plaintiff's co-workers often called Plaintiff's husband's cell phone to communicate with her about work matters.

24. On April 23, 2018, Plaintiff made a request to Finance Section coworker Christina Myers to receive a USPP Force-issued cellular phone in order to assist USPP Force Personnel after hours with Charge Card Program questions and password resets as Plaintiff's position often required.

25. With acrimony and without reason, Christina Myers dismissed Plaintiff's justification for a cell phone outright. This was after Plaintiff's explained her need for the phone due to her increased duties due to taking on some the role of the former Agency Organization Program Coordinator position, as well as the fact that colleagues were calling her husband's phone in order to connect with her.

26. Instead, Myers went on to dishonestly state that the employee whose responsibilities were then being added to Plaintiff's role had already returned the phone, and that the phone was now in someone else's possession. Upon later discussion with colleagues, Plaintiff learned she had been lied to when in fact everyone in the Section, except Plaintiff, had Force cell phones.

27. In denying Plaintiff's request for a work cell phone, Plaintiff was treated differently from all others in her Section. Additionally, the conditions of Plaintiff's employment were unequally affected by this denial.

28. Due to this action, Plaintiff suffered confusion, frustration, and insecurity at being treated differently than her colleagues in the Finance Section.

29. Plaintiff continued to suffer harassment and unwanted conduct by her colleagues Myers and Tyler. Several incidents occured at USPP in from May to September 2018 in which Plaintff was made to feel dumb, laughed at, shunned, and spoken to harshly by both Myers and

Tyler. This conduct created a hostile work environment for Plaintiff, who was very uncomfortable at her place of employment.

30. During this time, in June, 2018, Plaintiff made a second request to Christina Myers for a USPP issued cell phone but again never received a response.

31. In September 2019, Plaintiff submitted her third cell phone request, this time to Anne O'Dell, USPP Chief Financial Operations Officer. After some time, Plaintiff was advised that she would not receive a cell phone due to budgetary reasons and that the USPP would conduct a cell phone audit.

32. To date, the USPP has not conducted any such audit. Instead, new hires are being issued cell phones in the New York Field Office. Plaintiff continues to be treated unequally.

33. Plaintiff came under further unequal treatment, and continued harassment from colleagues in the Finance Section when in June 2018, she informed Christina Myers that she would be out on medical leave for several weeks due to a medical procedure she was to undergo on June 19, 2018.

34. Myers initially told Plaintiff, "do not worry about the reviews" for which Plaintiff was responsible and that Myers would set up a staff meeting to discuss this issue. Plaintiff arrived at the stated time and date of the staff meeting but Myers herself was not there. Instead, Myers instructed Plaintiff to teach the others how to create the reviews. Plaintiff's colleague, Carolyn Tyler, was agitated at the news and walked away in anger. Plaintiff's workplace continued to be one of ongoing hostility and harassment of which USPP management was not only aware but compounded by its own acts of unwanted conduct.

35. Moreover, on July 20, 2018, during recovery from surgery, Plaintiff attempted to telework and was having computer difficulties. Aftering advising Christina Myers of the computer

issues, Plaintiff was advised to bring her computer back to the office. This was in stark contrast to the hospitable treatment afforded others in the Finance Section when out of the office due to a surgery. Specifically, in 2017, Carolyn Tyler was out recovering from knee surgery and Myers not only brought Tyler's computer to her but allowed her to telework the entire time. Plaintiff was again subjected to unequal treatment as she was offered the same opportunity as her colleagues at USPP.

36. Upon Plaintiff's return to work on August 1, 2018, Plaintiff was greeted only by tension and was made to feel unwelcome by colleagues Carlyon Tyler and Christina Myers. Tyler and Myers were non-communicative and as a result, Plaintiff suffered anxiety and feelings of worthlessness at work.

37. Additionally, despite Myer's reassurances to Plaintiff to not worry about completing certain work while she was out on medical leave, Plaintiff was in fact penalized for not completing the assignment. On August 2, 2018, Plaintiff received an incomplete 2018 Employee Performance Appraisal Plan (EPAP) from Myers. Myers stated that Plaintiff received a Level 3 in one Element of the assessment because she was not there to complete the work. Myers told Plaintiff that management approved this downgraded level. Plaintiff's final FY2018 EPAP rating was "Fully Successful with a Numerical Summary Rating of 4.0" (out of 5.0).

38. Moreover, in addition to unlawfully penalizing Plaintiff for work not completed while out on medical leave, Plaintiff's supervisors fail to provide supporting documentation for each of the critical elements as required. This was despite Plaintiff providing supervisors with a list of her accomplishments, which was also not included. Plaintiff was again singled out and the subject of unequal treatment by USPP causing her financial harm and emotional distress.

6

39. On August 5, 2018, Plaintiff filed a Formal Reconsideration of her FY2018 Employee Performance Appraisal Plan with Assistant Chief Scott Fear (retired in October 2018), asserting that her EPAP was in violation of the USPP Performance Management Rules: "An employee on approved leave (annual, sick or leave without pay) cannot be penalized for work that is not completed while on approved leave." (Performance Management Handbook, P.60) Plaintiff received no response from USPP as to this request.

40. As a result, Plaintiff again requested reconsideration of the FY2018 EPAP to Chief Robert Maclean on November 20, 2018 (2nd Requested Follow Up), Karlyn Payton-Williams on March 4, 2019 (3rd Request Follow Up). Pamela Blyth on September 21, 2019 (4th Request Follow Up) and Dave Davies on October 17, 2019. By failing to respond to Plaintiff's request to this day, USPP has violated the Reconsideration Process that is outlined in the US Department of the Interior Performance Management Handbook (370DM 430 HB, Pages 48-50).

41. Moreover, not only did USPP fail to address Plaintiff's request for reconsideration of her FY2018 EPAP, Karlyn Payton-Williams, USPP Employee and Labor Relation, sent Plaintiff intimidating and threatening emails regarding the request.

42. Later in the fall of 2018, Plaintiff was told by Carolyn Taylor, Plaintiff's acting Supervisor, to handle some work that Plaintiff knew was not her responsibility. Taylor attempted to foist work onto Plaintiff's workload, in collaboration with Myers, to further harass and undermine Plaintiff's working conditions. Plaintiff requested to have a meeting with management in order to address the issue but there was no resolution to the issue.

43. On October 23, 2018, Plaintiff attempted to meet with Deputy Chief Steven Booker and Carolyn Tyler to address the harassment she was encountering within the Finance Section.

Instead, Plaintiff was verbally attacked by Deputy Chief Booker. Plaintiff ended the meeting due to Booker's hostility.

44. As a result of the incident with Booker and overall harassment to which she was subjected, in October 2018, Plaintiff filed a 16E Complaint for Harassment and Hostile Work Environment against members of the United States Park Police Finance Section and with members of the Executive Command Staff. In May 2019, Karlyn Payton-Williams, USPP Employee and Labor Relations, informed Plaintiff that a 16E complaint only applies to a hostile work environment or unfair treatment caused by sexual harassment and that Plaintiff would have to file a complaint with the Commander of OPR. She further advised that she would share the information with USPP Commander of OPR and Employee Labor Relations Unit Pamela Blyth and that Sgt. Frank Harrell of the Internal Affairs Unit would contact Plaintiff to investigate. To date, Plaintiff has not been contacted for an investigation.

45. In retaliation for Plaintiff's request for reconsideration of her FY2018 EPAP and for filing her 16E complaint, USPP management began to retaliate against Plaintiff by cutting off communication with her. Plaintiff was treated differently than others in the office, to the detriment of her work conditions as a result. Steven Booker, Deputy Chief, and Gregory Monahan, Acting Chief, failed to acknowledge Plaintiff on a regular basis. Deputy Chief Booker told Plaintiff's colleague, Janeen Tyson, that he would never speak to her again.

46. On November 5, 2018, Plaintiff filed a formal complaint with the Department of the Interior Office of the Inspector General Office against Deputy Chief Gregory Monahan (Now Assistant Chief) and Deputy Chief Stephen Booker (DOI-OIG Complaint # OI-HQ-19-0109-R). After this filing, Monahan and Booker's retaliation against Plaintiff increased as they shunned, ignored, or chose to speak to Plaintiff but in a harsh and demeaning manner.

47. Throughout the next year, Plaintiff continued to be harassed and the target of unwanted conduct at USPP by both Executive Command Staff and colleagues in the Finance Section. They held meetings of the Finance Section without inviting Plaintiff, acted as if she did not exist either as a USPP employee, continued to foist work onto her that was not her responsibility, and failed to treat her the same as others with regard to basic conditions of employment, including denying her the usage of a USPP vehicle that her colleagues often used.

48. Moreover, Plaintiff's correspondence and requests to supervisors continued to be ignored. IN May 2019, Plaintiff sent Captain Chris Cunningham an email regarding the handling of her 16E Complaint, Captain Cunningham, the Office of Professional Responsibility, who never responded.

49. Supervisors advised Plaintiff that they were monitoring her upon their arrival to their new positions.

50. No other employees were being monitored.

51. Lastly, similar to Plaintiff's FY2018 EPAP, Plaintiff received on her FY2019 EPAP the final rating "Exceeds Expectations with a Numerical Summary Rating of 4.0" (out of 5.0). Again, Plaintiff's supervisors failed to include supporting documentation for each critical element and did not provide justification to support the rating. This was despite Plaintiff providing supervisors with a list of her accomplishments which was then not included in the evaluation.

52. Plaintiff was also made aware by her colleague, Carolyn Tyler, that Tyler herself received a Level 5 Rating on her FY2019 EPAP which entitled her to financial and time awards. Plaintiff's evaluation was the only evaluation of Finance Section employees that was tremendously underrated. Plaintiff was singled out for retaliation and underrated in her FY2019 EPAP, and as a result, suffered financial harm and emotional distress.

53. Subsequent to receiving her FY2019 EPAP, Plaintiff met with Anne O'Dell, Chief Financial Operations Officer, and Edward Zawislak, Commander of Business Operation Division, to discuss issues and concerns regarding the evaluation that were not followed. She informed these supervisors again of the ongoing harassment she was subjected to by colleagues in the Finance Division. They offered her a switch to a different cubicle but no other support. Moreover, both O'Dell and Zawislak were new to their supervising positions at the time and did not interact with Plaintiff at any mid-year review progress review.

54. On December 17, 2019, Plaintiff sent a request for reconsideration of the FY2019 EPAP to the United States Park Police Human Resources Department. She received a generic email stating that the reconsideration request was received.

## COUNT I
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## 29 U.S.C. §621, et seq.

55. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

56. This action is brought pursuant to the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq., for discrimination on the basis of age.

57. The aforesaid discriminatory treatment by Defendants toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of her employment.

58. Other similarly situated employees not of Plaintiff's age group were not subject to the same conditions of employment as Plaintiff.

59. A causal connection exists between Defendants' actions as to the conditions of Plaintiff's employment, resulting in financial and other damage, and Plaintiffs' ages.

60. Defendants' aforementioned conduct and illegal action toward Plaintiff reflect directly on a discriminatory attitude toward Plaintiff based on age.

61. Defendants' actions constituted a violation of the Age Discrimination In Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq.

62. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, loss of income and other damages.

## COUNT II
## RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000(e) et. seq.

63. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

64. Pursuant to Title VII 42 U.S.C. § 2000(e) et. seq., it is unlawful for an employer to retaliate against an employee who has engaged in protected activity, including the filing an EEO complaint or participation in an employer's internal EEO complaint process, even if the underlying discrimination allegation is unsuccessful or untimely.

65. Plaintiff's 16E complaint and requests for reconsideration of her EPAPs were protected activity for which USPP undertook materially adverse action against her.

66. USPP's materially adverse actions would deter a reasonable person from engaging in protected activity.

67. USPP's retaliation against Plaintiff was a motivating factor in it's actions against her.

68. Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of Defendant's unlawful action.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant for

 A. On Count I (Violation of the Age Discrimination Employment Act of 1967), economic damages in the amount of  $ 100,000.00 and Compensatory Damages in the Amount of $300,000.00.

 B. On Count II (Retaliation in Violation of Title VII of the Civil Rights Act of 1964), economic damages in the amount of $100,000.00 and Compensatory Damages in the Amount of $300,000.00

 C. Award Plaintiff all of her fees and costs associated with this matter, including her attorneys' fee; and

 D. Such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

## JURY TRIAL

Plaintiff requests that all matters in this case be tried by a jury.

       Respectfully Submitted,

       /s/Neil S. Hyman_____
       Neil S. Hyman, Esquire
       DC Bar No. 465047
       Law Office of Neil S. Hyman, LLC
       4520 East West Highway, Suite 700
       Bethesda, Maryland 20814
       301-841-7105 (p)
       301-986-1301 (f)
       neil@neilhymanlaw.com
       *Counsel for Plaintiff*