**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CONNIE GREEN,<br><br>        *Plaintiff*,<br><br>  v.<br><br>DEB HAALAND, *et al*,<br><br>        *Defendants.* | Civil Action No. 21-329 (RDM) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Connie Green brings this action for age discrimination and retaliation, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, against the Secretary of the U.S. Department of the Interior ("the Department").[1]  Dkt. 1. The Department has moved to dismiss the complaint for failure to exhaust and for failure to state a claim.  Dkt. 8.  For the reasons that follow, the Court will **GRANT** the Department's motion to dismiss.

## I.  BACKGROUND

### A.    Factual Background

Green joined the United States Park Police ("Park Police"), a component of the Department of the Interior, in 1985.  Dkt 1 at 2 (Compl. ¶ 13).  During the time relevant to this action, she served as a Financial Specialist.  *Id.*  She alleges that, while serving in that role, she was subjected to discrimination on the basis of age (she was over 40) and retaliation on the basis

---

[1] Pursuant to Rule 25(d), the current Secretary of the Interior, Deb Haaland, "is automatically substituted as a party" with no effect on Green's "substantial rights." Fed. R. Civ. P. 25(d).

of allegedly protected Title VII activity (she filed a "16E complaint" for a hostile work environment and sought reconsideration of an allegedly unfair employee performance appraisal plan). *Id.* at 10–11 (Compl. ¶¶ 55–68). For purposes of evaluating the Department's motion to dismiss, Dkt. 8, the following allegations, which are taken from Green's complaint, are accepted as true, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

      1.    *Discrimination*

Much of Green's complaint focuses on her alleged inability to secure a work-issued cell phone. She alleges, in particular, that on at least three occasions in 2018 and 2019 she requested such a phone. *See* Dkt. 1 at 3–5 (Compl. ¶¶ 23–24, 31). According to the complaint, the Park Police denied those requests, "[w]ith acrimony and without justification," even though other employees in her section were purportedly issued cell phones. *Id.* at 4 (Compl. ¶ 25). These denials, Green alleges, caused her "confusion, frustration, and insecurity" on account of "being treated differently than her colleagues." *Id.* (Compl. ¶ 28).

Green also alleges that she was subjected to disparate and otherwise hostile treatment before, during, and after a medical procedure that she underwent in June 2018. Leading up to that surgery, Green's supervisor allegedly scheduled a meeting to discuss reassignment of certain "'reviews' for which [Green] was responsible." *Id.* at 5 (Compl. ¶ 34). Green alleges that her supervisor did not attend this meeting and instead "instructed [Green] to teach the others how to create the reviews." *Id.* One of Green's colleagues allegedly became "agitated at [this] news and walked away in anger." *Id.* Green also alleges that, following the surgery, she "attempted to telework and was having computer difficulties." *Id.* at 5–6 (Compl. ¶ 35). When Green asked her supervisor for assistance, her supervisor instructed her to bring the computer into the office, even though (according to Green) that same supervisor delivered a computer to a different

colleague's home when that colleague was out on medical leave.  *Id.* at 6 (Compl. ¶ 35).  Finally, Green alleges that, "[u]pon [her] return to work on August 1, 2018," she "was greeted only by tension and made to feel unwelcome by [her] colleagues."  *Id.* (Compl. ¶ 36).

Sometime after her return to work, Green she was assigned to handle work that she contends fell outside her job description.  *Id.* at 7 (Compl. ¶ 42).  Her supervisors did this, Green alleges, "to further harass and undermine [her] working conditions."  *Id.*  Green "requested . . . a meeting with management in order to address" this issue but "there was no resolution."  *Id.* Green later "attempted to meet with [the] Deputy Chief" of the Park Police and her acting supervisor "to address the harassment she was encountering within the Finance Section," but, after she "was verbally attacked by [the] Deputy Chief," she "ended the meeting."  *Id.* at 7–8 (Compl. ¶ 43).  According to the complaint, Green then filed "a 16E Complaint," *id.* at 8 (Compl. ¶ 44), which is the National Park Service's internal mechanism for reporting violations of its anti-harassment policy, *see* Nat'l Park Serv., *Director's Order #16E:  National Park Service Anti-Harassment Policy* (Apr. 19, 2018), https://www.nps.gov/policy/DOrders/DO_16E _2018rev.htm.  Although Green filed this complaint in October 2018, she alleges that she was not told until May 2019 that 16E complaints were for claims of sexual harassment and that she needed to file her complaint regarding an allegedly hostile work environment with a different agency official.  Dkt. 1 at 8 (Compl. ¶ 44).  Even though she was allegedly promised that an agency official would "contact [her] to investigate" her claims, "[t]o date, [she] has not been contacted for an investigation."  *Id.*

Green's complaint in this action also focuses on the performance reviews (also known as Employee Performance Appraisal Plans, or "EPAPs") that she received in 2018 and 2019.  She alleges that on August 2, 2018 she received an "incomplete" EPAP for "work not completed

while out on medical leave," even though her supervisor had assured her that she did not need to "worry about completing [that] work." *Id.* (Compl. ¶¶ 37–38).  Green ultimately received a "Fully Successful" rating of 4.0 (out of 5.0) on her 2018 EPAP, although her supervisor allegedly refused to "provide supporting documentation for each of the critical elements as required" and declined to include a "list of [Green's] accomplishments," which Green had submitted. *Id.* (Compl. ¶ 38).  Green alleges that she requested reconsideration of her 2018 EPAP on five different occasions—on August 5, 2018, November 20, 2018, March 4, 2019, September 21, 2019, and October 17, 2019. *Id.* at 7 (Compl. ¶¶ 39–40).  According to Green, the Park Police "fail[ed] to address" these requests, and one Park Police official "sent [her] intimidating and threatening emails." *Id.* (Compl. ¶ 41).

Green received an "Exceeds Expectations" rating of 4.0 (out of 5.0) on her 2019 EPAP, and she alleges that her supervisors, once again, failed to include the required "supporting documentation" and declined to include a "list of [Green's] accomplishments," which Green had provided. *Id.* at 9 (Compl. ¶ 51).  One of Green's colleagues received a 5.0 rating, according to the complaint, which entitled that colleague to "financial and time awards." *Id.* (Compl. ¶ 52). Green avers that her own evaluation was "the only evaluation of Finance Section employees that was tremendously underrated." *Id.*  As with her 2018 EPAP, Green sought reconsideration of her 2019 EPAP, including in a request that she sent to the Park Police Human Resources Department on December 17, 2019. *Id.* at 10 (Compl. ¶¶ 53–54).  In response to her December 2019 request for reconsideration, she merely "received a generic email stating that the reconsideration request was received." *Id.* (Compl. ¶ 54).

2. *Retaliation*

Green further alleges that the Park Police retaliated against her for seeking reconsideration of her 2018 EPAP and for filing her 16E complaint in October 2018. *Id.* at 8 (Compl. ¶¶ 44–45). According to Green, agency officials reacted to her request for reconsideration and her 16E complaint "by cutting off communications with her" and "fail[ing] to acknowledge [her]." *Id.* (Compl. ¶ 45). One such official, the Deputy Chief who Green maintains displayed "hostility" towards her during a meeting, *id.* (Compl. ¶ 43), allegedly told one of Green's colleagues "that he would never speak to [Green] again," *id.* (Compl. ¶ 45). Green went on to file a "formal complaint" with the Department's Office of the Inspector General ("OIG") but, Green alleges, the retaliation against her only "increased" as those against whom she filed the OIG complaint "shunned" and "ignored" her, or spoke to her "in a harsh and demeaning manner." *Id.* (Compl. ¶ 46).

Green further alleges that, "[t]hroughout the next year," she "continued to be harassed." *Id.* at 9 (Compl. ¶ 47). Her colleagues allegedly "held meetings . . . without inviting [her], acted as if she did not exist . . . , continued to foist work onto her that was not her responsibility, and failed to treat her the same as others with regard to basic conditions of employment, including [by] denying her the usage of a [Park Police] vehicle that her colleagues often used." *Id.* In addition, Green's supervisors allegedly "ignored" her correspondence regarding her 16E complaint, *id.* (Compl. ¶48) and "advised [her] that they were monitoring her," *id.* (Compl. ¶ 49). According to Green, "she was singled out for retaliation and underrated" on her 2019 EPAP, which caused her "financial harm and emotional distress." *Id.* (Compl. ¶ 52).

### B.       Procedural History

Green avers that she first contacted the Department's Equal Employment Office ("EEO") counselor "[i]n or about January[] 2020" and that she was interviewed by the EEO counselor on January 21, 2020. *Id.* at 2 (Compl. ¶¶ 6–7).  Although a "Report of Counseling" issued "on or about June 19, 2020," the Department "has taken no further action." *Id.* (Compl. ¶ 11).  Because "[m]ore than 180 days . . . passed" and the Department did "not complete[] its investigation," Green filed suit on February 5, 2021. *Id.* (Compl. ¶ 12).

Green's complaint includes two claims.  In Count One, she alleges that the Department discriminated against her "based on age," in violation of the ADEA, *id.* at 10–11 (Compl. ¶¶ 57, 60–62), and, in Count Two, she alleges that the Department unlawfully retaliated against her, in violation of Title VII, based on her "16E complaint and requests for reconsideration of her EPAPs," *id.* at 11 (Compl. ¶¶ 64–67).  Green seeks $100,000 in economic damages and $300,000 in compensatory damages for each count. *Id.* at 12.

The Department's motion to dismiss, Green's opposition, and the Department's reply, are now before the Court.  Dkts. 8, 10, 11.

## II.  LEGAL STANDARD

Both grounds on which the Department seeks dismissal—administrative exhaustion and failure to state a claim—are properly addressed as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Marcelus v. Corrections Corp. of America/Correctional Treatment Facility*, 540 F. Supp. 2d 231, 235 (D.D.C. 2008).  As the Department acknowledges, failure to exhaust under the ADEA and Title VII is an affirmative defense, as opposed to a jurisdictional prerequisite to suit. *See Achagzai v. Broad. Bd. of Governors*, 170 F Supp. 3d 164, 174 (D.D.C. 2016).  As a result, an ADEA or Title VII plaintiff is not required to plead

exhaustion, and the defendant bears the burden of proof. *Id.* But, as with other affirmative defenses, the defendant may seek dismissal under Rule 12(b)(6) if "the facts that give rise to the [exhaustion] defense are clear from the face of the complaint." *Bajaj v. U.S. Dep't of Hous. & Urb. Dev.*, No. 21-cv-1149, 2022 WL 612598, at *4 (D.D.C. Mar. 2, 2022) (quoting *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 245 n.1 (D.D.C. 2018).

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F. 3d 235, 242 (D.C. Cir. 2002), which requires that the Court "first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face,'" *Blue v. District of Columbia*, 811 F. 3d 14, 20 (D.C. Cir. 2015) (alterations in original) (citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor must the complaint demonstrate that recovery is likely, so long as the facts alleged are "enough to raise a right to relief above the speculative level," *id.* at 555–56 (quotation marks omitted). In deciding on a 12(b)(6) motion, the Court may consider only the complaint itself, documents attached to or incorporated by reference in the complaint, and judicially noticeable materials, including a plaintiff's EEO documents. *McIver v. Mattis*, 318 F. Supp. 3d 245, 249–50 (D.D.C. 2018).

## III. ANALYSIS

The Department moves to dismiss Green's complaint on two grounds. First, the Department argues that most of Green's claims must be dismissed because she failed timely to exhaust her administrative remedies, Dkt. 8 at 12–13, as is required to proceed under the ADEA and Title VII, *see Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017). Second, with respect to

the remaining claims, the Department argues that she has failed to allege facts sufficient to state a claim under either the ADEA or Title VII.  Dkt. 8 at 15–26.  The Court will address each argument in turn.

## A.    Administrative Exhaustion

A plaintiff must exhaust her administrative remedies before filing a claim under either the ADEA or Title VII.  *See Coleman*, 867 F.3d at 206.  The same administrative process governs claims for discrimination and retaliation under both statutes.  29 C.F.R. § 1614.103(a).  Under that process, a prospective plaintiff must submit an administrative complaint to her agency's EEO office, and she may file suit only at the conclusion of that process or if the agency fails to act on the administrative complaint within 180 days.  *See* 29 U.S.C. § 633a(b) (empowering the EEOC to "enforce" the ADEA and requiring it to process individual complaints); *see generally* 29 C.F.R. § 1614.103–.110 (providing detailed requirements for the EEO complaint process), *id.* § 1614.407 (providing that complainants may "file a civil action in an appropriate United States District Court" after exhausting the EEO process).  To initiate that process, a plaintiff must first contact her agency's EEO office "within 45 days" of the allegedly discriminatory act, unless she shows that she had good cause for not filing with that time period.  29 C.F.R. § 1614.105(a); *see also Green v. Brennan*, 578 U.S. 547, 549 (2016).

As a result, the regulatory scheme generally "bar[s] discrimination claims that an employee does not first bring to the attention of an agency's EEO counselor within forty-five days of the alleged conduct."  *Vickers v. Powell*, 493 F.3d 186, 198 (D.C. Cir. 2007).  Significantly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536

U.S. 101, 113 (2002).  This rule, however, does not apply to hostile work environment claims, because a hostile work environment claim, by its very nature, "involves repeated conduct" that can occur "over a series of days or perhaps years" that "collectively constitute one 'unlawful employment practice.'"  *Id.* at 115, 117 (quoting 42 U.S.C. § 2000e–5(e)(1)).

Here, the Department argues that Green, "[b]y her own admission, . . . did not [initiate] EEO contact until January . . . 2021," even though many of her claims arose "at various points between 2016 and 2019."  Dkt. 8 at 14.  According to the Department, the only alleged discriminatory act that fell within the relevant 45-day window was her December 17, 2019 request for reconsideration of her 2019 EPAP.  Dkt. 1 at 10 (Compl. ¶ 54); *see also* Dkt. 8 at 14 n.3 (conceding claims based on this event would be timely).  As to all other discrete acts described in the complaint, the Department maintains that administrative exhaustion precludes reliance on such acts for Green's claims under the ADEA or Title VII.  Dkt. 8 at 14.

Green largely concedes this point, arguing instead that she seeks to press a hostile work environment claim, rather than a claim for discrete acts of discrimination.  Because her complaint "identifies a series of harassing and discriminatory events that took place over a course of several years, which is the essence of a hostile work environment claim," Green contends that she is not time-barred from relying on events that occurred more than 45 days prior to her initial outreach to an EEO counselor on January 21, 2021.  Dkt. 10 at 6.  And, as noted above, it is true that hostile work environmental claims are treated differently for purposes of administrative exhaustion.  Because such a claim "involves repeated conduct" that can occur "over a series of days or perhaps years" that "constitute[s] one 'unlawful employment practice,'" "the employer may be liable for all acts that are part of this single claim."  *Morgan*, 536 U.S. at 115, 117–18 (quoting 42 U.S.C. § 2000e–5(e)(1)).  "In order for the charge to be timely, the

employee need only file a charge within [the statutorily-required time period] of any act that is part of the hostile work environment." *Id.* at 118.

Three obstacles stand in the way of Green's reliance on the carve-out in *Morgan* for hostile work environment claims.  First, as the Department notes in its reply, Dkt. 10 at 5, neither of the two counts in Green's complaint includes any mention of a hostile work environment, *see* Dkt. 1 at 10–11 (Compl. ¶¶ 55–68).  Instead, Count One alleges a disparate treatment claim, and Count Two alleges a retaliation claim.  In particular, Count One alleges that the Park Police discriminated against her on the basis of her age in a manner that "affected the terms, conditions and privileges of her employment," while Count Two alleges that "Plaintiff's 16E complaint and requests for reconsideration of her EPAPs were protected activity for which [the Park Police] undertook materially adverse action against her."  *Id.* (Compl. ¶¶ 57, 60, 65).  It is well-established, however, that a plaintiff may not amend her complaint through an opposition brief. *See, e.g.*, *Sai v. Transp. Security Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018); *Manna v. U.S. Dep't of Justice*, 106 F. Supp. 3d 16, 19–20 (D.D.C. 2015).

To be sure, Green does allege at one point in her complaint allege that "[s]everal incidents occurred . . . from May to September 2018 in which [she] was made to feel dumb, laughed at, shunned, and spoken to harshly by" her supervisors, and that "[t]his conduct created a hostile work environment for [Green], who was very uncomfortable at her place of employment."  Dkt. 1 at 4–5 (Compl. ¶ 29).  And she also alleges that after one of her colleagues left the meeting the preceded Green's surgery in an "agitated" and "ang[ry]" state, Green's "workplace continued to be one of ongoing hostility and harassment."  *Id.* at 5 (Compl. ¶ 34). But more than passing reference in the factual allegations of a complaint is necessary to state a hostile work environment claim.  If that is the claim that Green intends to bring, she needs

clearly to say so *in her complaint*, so that the Department is on notice of what it needs to defend. "Plaintiffs' complaint," after all, "must . . . 'give the defendant fair notice of the claim.'" *Galloway v. Chugach Gov't Servs., Inc.*, 199 F. Supp. 3d 145, 150 (D.D.C. 2016) (quoting *Twombly*, 550 U.S. at 555) (quotation marks and alterations omitted).

Second, even assuming that these two allegations—that is, paragraphs 29 and 34 of Green's complaint—can be read to assert a hostile work environment claim, those paragraphs address conduct that occurred in 2018, well before the 45-day window proceeding her initiation of the EEO process.  Although *Morgan* permits a court to consider conduct that might be time-barred if treated as a discrete act, the pattern of conduct making up a hostile work environment claim must include at least one "act contributing to the claim [that] occur[ed] within the filing period," 536 U.S. at 117—here, the 45-day window preceding January 2020.

Third, as the D.C. Circuit has explained, "[t]he *Morgan* principle is not . . . an open sesame to recovery for time-barred violations."  *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011).  Instead, "incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers.'" *Id.* (alterations omitted) (quoting *Morgan*, 536 U.S. at 120–21).  Under that principle, a "plaintiff cannot cure [her] failure to timely exhaust [her] complaints . . . by sweeping them under the rubric of a hostile work environment claim."  *Dudley v. WMATA*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013).  "[W]hen it appears [that a] plaintiff is trying to bootstrap unexhausted discrimination and retaliation claims into [her] exhausted" claims, "the Court should demand *some* connection between the actions."  *Id.* at 165 (collecting cases); *see also Edwards v. EPA*,

456 F. Supp. 2d 72, 96 (D.D.C. 2006) (noting that courts regularly "refuse[] to permit . . .

plaintiff[s] to bootstrap the same series of incidents" of alleged discrimination "into a broader

hostile work environment claim" (quotation marks and alterations omitted)).

In her opposition, Green does little to explain how she has satisfied this standard.  The

entirety of her analysis on this point is as follows:

> In this case, Plaintiff identifies a series of harassing and discriminatory events
> that took place over a course of several years, which is the essence of a hostile
> work environment claim and is consistent with the facts alleged in the
> Complaint. Moreover, at this stage, the facts alleged by Plaintiff must be
> accepted as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).
> As stated, the facts herein state a claim to relief that is plausible on its fact.
> *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has exhausted her
> administrative remedies and stated a claim for a hostile work environment.
> Ultimately, Plaintiff was left with no recourse other than to retire (which is
> evidence of her constructive discharge).[2]

Dkt. 10 at 6.  Green makes no effort, in other words, to explain how the various discriminatory

acts she alleges in her complaint "are adequately linked into a coherent hostile environment

claim," *Baird*, 662 F.3d at 1251.  Nor is it obvious, for example, how the denial of Green's

requests for a work-issued cell phone in April 2018, June 2018 and September 2019, *see* Dkt. 1

at 5 (Comp. ¶¶ 24, 30–31), relates to a "hostil[e]" encounter with a Deputy Chief in October

2018, *id.* at 7–8 (Compl. ¶ 43).  Likewise, neither the complaint nor Green's opposition brief

elucidate how those incidents relate to the alleged lack of a response Green received to her

request for reconsideration of her 2019 EPAP, which she sent to the Park Police Human

Resources Department in December 2019.  *Id.* at 10 (Comp. ¶ 54).  And it is this last—missing—

---

[2] Although here (and elsewhere) Green alludes to a claim for constructive discharge, Green
includes no such allegations in her complaint.  Given that "a complaint may not be amended by
the briefs in opposition to a motion to dismiss," *Manna*, 106 F. Supp. 3d at 19–20, the Court will
ignore references to any such claims in addressing the motion before it.

link that is crucial, as the final request for reconsideration is the only act that Green alleges occurred within the 45-day window prior to Green's first EEO contact.[3]  Dkt. 8 at 14 n.3; Dkt. 11 at 9 n.4.

To be sure, there may be some relationship between these various events that ties them together in a "coherent hostile environment claim," *Baird*, 662 F.3d at 1251.  But that connection is not apparent from the face of Green's complaint and is not elucidated in her opposition brief, leaving the Court unpersuaded that Green has alleged a sufficiently cohesive hostile work environment claim for Green to invoke *Morgan*.

Accordingly, the Court concludes that, as currently alleged, the only portions of Green's claims that can survive the Department's exhaustion defense relate to her December 2019 request for reconsideration of her 2019 EPAP (and possibly, *see supra* note 3, her final request for a work-issued cell phone).  The Court will, however, grant Green leave to file an amended complaint to the extent she can allege a proper hostile work environment claim or can clarify that any discrete discriminatory conduct occurred within the 45-day window.

## B.    Failure to State a Claim

This, then, leaves Green's contention that the Park Service discriminated against her based on her age or retaliated against her based on her protected EEO conduct when it failed to act on her request to reconsider her 2019 EPAP in December 2019 (and, possibly, when it denied her third request for work-issued cell phone sometime after September 2019).  Dkt. 1 at 10–11

---

[3]  The only other act that might possibly fall within the 45-day window relates to Green's third request for access to a work cell phone.  She alleges that she made that request in September 2019—well before the window opened—but merely asserts that her request was rejected "[a]fter some time," Dkt. 1 at 5 (Compl. ¶ 31), leaving open the possibility that the rejection did not come until sometime within the 45-day window.

(Compl. ¶¶ 55–68).  To proceed on her ADEA discrimination claim, Green must plausibly allege
(1) that she "suffered an adverse employment action" and (2) that her employer took that action
"because of" her age.  *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).
And to proceed on her Title VII retaliation claim, she must plausibly allege that "(1) that [she]
opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse
action against [her]; and (3) that the employer took the action 'because' the employee opposed
the practice."  *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

The Department argues (among other things) that Green's ADEA claim fails because she
does not plausibly allege that she "suffered an adverse employment action," *Brady*, 5320 F.3d at
493, and that her Title VII retaliation claim fails because she does not plausible allege a causal
relationship between her allegedly protected activity and the alleged retaliation, *McGrath*, 666
F.3d at 1380.  The Court will address each contention in turn.

1.    *ADEA Claim*

For purposes of a disparate treatment claim, "an adverse employment action must be 'a
significant change in employment status, such as hiring, firing, failing to promote, reassignment
with significantly different responsibilities, or a decision causing significant change in benefits.'"
*Achagzai v. Broad. Bd. of Governors*, 308 F. Supp. 3d 396, 404 (D.D.C. 2018) (quoting *Douglas
v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)).  Here, the only two claims that Green has
timely exhausted involve the Department's alleged failure to respond to her December 2019
request for reconsideration of her 2019 EPAP and (at least arguably, *see supra* note 3) the
Department's denial of her request for a work-issued cell phone in September 2019.

Neither constitutes an adverse employment action.  As for the first event, "a thick body of
precedent . . . refutes the notion that formal criticism or poor performance evaluations are

14

necessarily adverse actions." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999)).  Rather, to qualify as an adverse employment action, a negative performance review "must 'affect[] the employee's terms and conditions, or employment or future employment opportunities'." *Achagzai*, 308 F. Supp. 3d at 404 (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)); *see also Psak v. Bernhardt*, No. 14-cv-116, 2020 WL 2849985, at *9 (D.D.C. June 1, 2020) ("A negative performance review does not constitute an adverse employment action unless it affects the employee's terms and conditions of employment or has some other tangible consequence.").

Here, Green alleges that she received an "Exceeds Expectations" rating of 4.0 (out of 5.0) on her 2019 EPAP and that her supervisors failed to attach the required "supporting documentation" and declined to include a "list of [Green's] accomplishments" that Green provided.  Dkt. 1 at 9 (Compl. ¶ 51).  Even putting aside the fact that the evaluation was a positive one, Green must plausibly allege that it "affect[ed] [the] terms and conditions of [her] employment" or had "some other tangible consequence" on her employment, *Psak*, 2020 WL 2849985, at *9.  In this respect, Green's bare allegation that she "suffered financial harm and emotional distress" as a result of her 2019 EPAP, Dkt. 1 at 9 (Compl. ¶ 52), is too conclusory to satisfy the relevant pleading requirements.  *See McKee v. U.S. Dep't of Just.*, 253 F. Supp. 3d 78, 83 (D.D.C. 2017) ("[T]he Court need not accept as true any legal conclusions disguised as factual allegations, nor need it accept 'naked assertions devoid of further factual enhancement.'" (quoting *Iqbal*, 556 U.S. at 678)).  Yet, beyond that bare allegation, Green merely avers that one of her colleagues "received a Level 5 Rating on her FY2019 EPAP[,] which entitled [that colleague] to financial and time awards." Dkt. 1 at 9 (Compl. ¶ 52).  That comes closer to

meeting the mark but still falls short because Green fails to allege that she would have (or would likely have) received those or similar awards had she received a better evaluation.

But, even if Green alleged that she would have qualified to receive some tangible benefit if she had received a 5.0 rating, the claim at issue is not a challenge to the performance review itself; that claim is untimely. Rather, all that Green can challenge at this point is the agency's alleged failure to respond to her request for reconsideration, which she submitted to the Park Police Human Resources Department on December 17, 2019. Dkt. 1 at 10 (Compl. ¶ 54). Green's complaint includes no allegations that this failure to reconsider her 2019 EPAP caused the kind of "a significant change" in Green's employment that would constitute an adverse employment action for purposes of the ADEA or Title VII. *Achagzai*, 308 F. Supp. 3d at 404 (quoting *Douglas*, 559 F.3d at 552). She does not allege, for example, that the Human Resources Department had a practice of correcting unfair evaluations (or even had authority to do so) or that, in December 2019 or January 2020, she could have still qualified for a financial award for her performance in 2019. In short, she offers no factual basis to infer that, had the Human Resources Department reconsidered her 2019 EPAP in December 2019 or January 2020, she would have received some tangible benefit. (And, although not raised in the Department's motion, the Court further notes that the complaint does not include even a hint of suggestion that the Human Resources Department failed to respond to her request for reconsideration *because of her age*. That omission provides an alternative basis to dismiss this claim.)

The Court is likewise unpersuaded that the Department's denial of Green's September 2019 request for a work-issued cell phone constituted "a significant change in employment status, such as . . . a decision causing significant change in benefits." *Douglas*, 559 F.3d at 552. Decisions from this district and elsewhere have concluded that "[t]he discontinuation of [a]

work-issued cellular telephone . . . does not constitute an adverse employment action." *Brooks v. Clinton*, 841 F. Supp. 2d 287, 301 (D.D.C. 2012); *see also O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004) (concluding that a transfer in positions did not constitute an adverse employment action even though that transfer "deprived [the plaintiff] of the perks associated with the administrative position, including the use of a work-provided cellular telephone, pager, vehicle, and parking space, as well as having most weekends and holidays off").  The Court need not embrace a categorical rule on this point, however, because even assuming the denial of a work-issued cell phone could, in some circumstances, constitute an adverse employment action, Green must still explain how that denial constituted "a significant change in employment status, such as . . . a decision causing significant change in benefits," *Douglas*, 559 F.3d at 552.

Green's complaint contains no allegations to that effect.  Instead, Green alleges only that, "[i]n September 2019, [she] submitted her third cell phone request, this time to Anne O'Dell, [the Park Police] Chief Financial Operations Officer," and that, "[a]fter some time, [Green] was advised that she would not receive a cell phone due to budgetary reasons and that the [Park Police] would conduct a cell phone audit."  Dkt. 1 at 5 (Compl. ¶ 31).  Although, according to Green, no such audit occurred and "new hires [we]re being issued cell phones," *id.* (Compl. ¶ 32), "[t]o survive a motion to dismiss, the allegations contained in the complaint must be sufficient to allow a reasonable trier of fact to find an objective, tangible harm—subjective injuries are not enough."  *Mohmand v. Broad. Bd. of Governors*, No. 17-cv-618, 2018 WL 4705800, at *4 (D.D.C. Sept. 30, 2018).  Nowhere does Green allege, for example, that because she lacked access to a work-issued cell phone she was unable to complete work assignments or that she received an adverse performance rating due to an inability to timely communicate with her colleagues.  To the contrary, she alleges that her husband, who also worked for the Park

Police, had a work-issued cell phone that she was able to use to receive work-related calls. "[N]ot everything that makes an employee unhappy is an actionable adverse action," *Douglas*, 559 F.3d at 552, and here Green has not alleged enough, at least at present, to permit the Court to conclude that a "reasonable trier of fact [could] find an objective, tangible harm," *Mohmand* 2018 WL 4705800, at *4, based on the denial of a work-issued cell phone alone.

The Court will, accordingly, grant the Department's motion to dismiss Green's age discrimination claim for failure to state a claim to the extent that claim is predicated on the Department's failure to reconsider her 2019 EPAP or to issue her a cell phone in response to her September 2019 request.

2.      *Title VII Retaliation*

Finally, the Court turns to Green's retaliation claim under Title VII.  Although it is far from clear that the two events that Green has (at least arguably) exhausted satisfy even the lesser standard required to allege a material adverse action for purposes of a retaliation claim, *see Newton v. Off. Of Architect of the Capitol*, 839 F. Supp. 2d 112, 116 (D.D.C. 2012) (a material adverse action for purposes of a retaliation claim must be "one that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination"), the Court concludes that Green's Title VII claim, at least as currently pled, fails for a more obvious reason:  The complaint contains no allegations that establish a plausible nexus between the Park Service's failure to respond to her December 2019 request for reconsideration of her 2019 EPAP or the denial of her third request for work-issued cell phone and any protected EEO activity (assuming for present purposes, that she ever engaged in any protected activity).

To state a claim for Title VII retaliation, the plaintiff bears the burden of establishing that the Department's improper motive "was the 'but-for' cause of the employer's adverse decision."

*Gross v. FBL Financial Services, Inc*., 557 U.S. 167, 176 (2009); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013).  This means that to survive a motion to dismiss a Title VII retaliation claim, the plaintiff must allege "sufficient factual matter, accepted as true," to permit "the reasonable inference" that the defendant's retaliatory animus was the but-for cause of the challenged employment action.  *Iqbal*, 556 U.S. at 678.  Green's complaint fails this modest test.

The complaint is exceedingly thin in its support for the contention that the Park Service retaliated against her by declining her September 2019 request for a work-issued cell phone and failing to respond to her December 2019 request for reconsideration of her 2019 EPAP.  Even assuming for present purposes that the rejection of Green's request for the cell phone came within the 45-day window, that request—unlike Green's previous requests—was made to the Chief Financial Operations Officer for the Park Police.  Dkt. 1 at 5 (Compl. ¶ 31).  Thus, even if one might infer that Green's relationship with her co-workers was poisoned by the filing of her 16E Complaint in October 2018, her complaint in this action contains no allegations that would permit the reasonable inference that the Chief Financial Operations Officer shared in that animus in December 2019 or January 2020 when she (possibly, *see supra* note 3) declined Green's request.  Although "temporal proximity can . . . support an inference of causation," that inference applies only "where the two events are very close in time."  *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citation and quotation marks omitted).  Similarly, although the involvement of an unbiased decisionmaker will not insulate the employer from liability, if the decisionmaker acts at the behest of the allegedly biased employee, *see Coats v. DeVos*, 232 F. Supp. 3d 81, 88–89 (D.D.C. 2017 (discussing "cat's paw" theory of liability), the complaint contains no allegations that would permit such an inference here.

The same analysis applies to Green's claim that she never received a response to her December 2019 request for reconsideration of the 2019 EPAP in retaliation for her filing a 16E Complaint in October 2018.  Again, the relevant events are separated by over a year, and she does not allege that decisionmaker had any reason to retaliate against Green.  As with her third request for a cell phone, Green's December 2019 request for reconsideration was not sent to her direct supervisors or to those who Green contends were biased against her.  Rather, that request was sent to Park Police Human Resources Department, where it merely generated "a generic email stating that the reconsideration request was received."  Dkt. 1 at 10 (Compl. ¶ 54).

The Court recognizes that far less is required to survive a motion to dismiss than a motion for summary judgment and that Green has yet to take any discovery in this case.  For that reason, the Court will not hold her to a particularly demanding burden; she is not required, for example, to include "detailed factual allegations" in her complaint.  *Twombly*, 550 U.S. at 555.  But neither labels nor legal conclusions will suffice, and she must offer factual allegations sufficient "to raise a right to relief above the speculative level."  *Id.*  She fails to clear even that low bar.  The complaint lacks any factual allegations that would permit a plausible inference that the Park Police Human Resources Department failed to respond to her request for reconsideration of a good, but not great, evaluation in December 2019 because Green filed a "16E complaint" over a year earlier and filed various "requests for reconsideration of her EPAPs."  Dkt. 1 at 11 (Compl. ¶ 65).

The Court will, accordingly, dismiss Green's retaliation claim to the extent that she alleges that the Park Service' Chief Financial Operations Officer declined her September 2019 request for a work-issued cell phone and the Park Service's Human Resources Department failed to respond to her December 2019 request for reconsideration of the 2019 EPAP *because* she filed

a 16E complaint in October 2018 and, at various times, requested reconsideration of her EPAPs.[4] The Court does not foreclose the possibility that Green may be able to state a retaliation claim, but she must allege more than she does in her existing complaint.

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that the Department's motion to dismiss, Dkt. 8, is **GRANTED** and the complaint is **DISMISSED** without prejudice.  To the extent Plaintiff has a factual basis to do so, she may file an amended complaint on or before April 28, 2022.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

March 28, 2022

---

[4] The Court notes that, at one point, Green alleges that she filed a formal complaint with the Department  of Interior's Office of the Inspector General, but she does not indicate whether that complaint alleged any form of discrimination covered by Title VII or that it constituted protected activity for purposes of Title VII.  Dkt. 1 at 8 (Compl. ¶ 46).  That omission is significant given that Green mentions only the 16E complaint and the requests for reconsideration her EPAPs in Count Two of the complaint.  *Id.* at 11 (Compl. ¶ 65).