# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONNIE GREEN,

*Plaintiff,*

v.

DEB HAALAND,

*Defendant.*

Civil Action No. 21-329 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Connie Green brings this action against the Secretary of the Department of Interior (the "Department"). As originally cast, her complaint alleged claims for (1) disparate treatment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and (2) retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The Court dismissed that complaint on numerous grounds, concluding, among other things, that Green timely exhausted only one allegation—or perhaps two allegations—of wrongdoing in the administrative process; that she failed to allege a hostile work environment claim sufficient to connect any prior (otherwise untimely) incidents to that (timely-raised) conduct; and that she failed to state a claim with respect to the timely-raised conduct. *See Green v. Haaland*, No. 21-cv-329, 2022 WL 898864 (D.D.C. March 28, 2022) ("*Green I*"). After dismissing the complaint, the Court *sua sponte* granted Green leave to file an amended complaint, *id.* at *10, and Green accepted that invitation, Dkt. 13. In her amended complaint, Green drops her claim for age discrimination and now asserts only one claim, alleging that the Department retaliated against her for engaging in protected activity in violation of Title VII. Dkt. 13 (Am. Compl.).

The Department moves to dismiss Green's amended complaint on many of the same grounds that it previously raised.  Dkt. 15.  The Court agrees that the minor changes that Green has made to her complaint fail to address the deficiencies identified in *Green I* and will, accordingly, **GRANT** the Department's motion to dismiss.

## I.  BACKGROUND

For purposes of evaluating the Department's motion to dismiss, Dkt. 15, the following allegations, which are taken from Green's amended complaint, are accepted as true.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Because the Court has previously described the factual background of this case in detail, *see Green I*, 2022 WL 898864, at *1–3, the following summary focuses on the new allegations and procedural developments since *Green I*.

Green joined the United States Park Police ("Park Police"), a component of the Department of the Interior, in 1985.  Dkt 13 at 2 (Am. Compl. ¶ 13).  During the time relevant to this action, she served as a Financial Specialist.  *Id.*  Green maintains that she was subjected to ongoing "hostile treatment by her co-workers and managers" over a period of years and that she retired because she could no longer tolerate that mistreatment.  *Id.* at 11 (Am. Compl. ¶ 62).

As explained in greater detail in *Green I*, that hostile and discriminatory treatment included the following: (1) the Department's repeated refusal to issue Green a Park Police (or "Force") cell phone, even though all other employees in the Finance Section were purportedly issued cell phones, *id.* at 3–4, 5 (Am. Compl. ¶¶ 22–27, 30–32); (2) two of Green's co-workers in the Finance Section, Christina Myers and Lisa Taylor, made her "feel dumb, laughed at [her], shunned [her], and spoke[] . . . harshly" about her, *id.* at 4 (Am. Compl. ¶ 29); (3) when Green was required to take a medical leave, Myers failed to show Green the same courtesy that she

showed Taylor when Taylor was out of the office recovering from surgery and was otherwise unfair to Green, *id.* at 5–6 (Am. Compl. ¶¶ 33–38); (4) "despite Myer[s'] reassurances . . . to not worry about completing certain work while she was out on medical leave," Green "was in fact penalized for not completing the assignment" and thus received a rating of 4 out of 5 on her 2018 Employee Performance Appraisal Plan" ("EPAP"), *id.* at 6 (Am. Compl. ¶ 37); (5) various agency officials, then, failed to respond to Green's multiple requests for reconsideration of her 2018 performance appraisal, *id.* at 6–7 (Am. Compl. ¶¶ 39–41); (6) Green again received a rating of 4 out of 5 on her 2019 Employee Performance Appraisal Plan and her December 17, 2019 request for reconsideration of that appraisal plan, which Green sent to Park Police Human Resources Department, resulted in "[n]o action," *id.* at 9–10 (Am. Compl. ¶¶ 52–56); and, finally, (7) over time, Green was subjected to "intimidating and threatening emails," efforts to "foist work onto her," "verbal[] attack[s]," management "cutting off communication" with her, exclusion from "meetings," and "monitoring," *id.* at 7–9 (Am. Compl. ¶¶ 41–43, 45, 48, 50–51).

In *Green I*, the Court held that most of these alleged actions occurred outside the forty-five-day window during which an employee is required to initiate the Equal Employment Opportunity ("EEO") process. *See* 2022 WL 898864, at *4–6; *see also* 29 C.F.R. § 1614.105(a); *Green v. Brennan*, 578 U.S. 547, 549 (2016). Green conceded that she did not initiate the EEO process until January 2020 and that most of the events at issue occurred more than forty-five days before then. *Green I*, 2022 WL 898864, at *4. But that was not a problem, according to Green, because the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), permits a plaintiff pressing a hostile work environment claim to treat events occurring "over a series of days and perhaps years" as a single "unlawful employment practice," 536 U.S. at 115, 117 (quoting 42 U.S.C. § 2000e–5(e)(1)), and thus, so long as at least one of the

events in such a series occurs within the forty-five-day window, the plaintiff may pursue a claim relating to the entire, collective violation.  *See* Dkt. 10 at 2–3.

The Court rejected Green's argument for three reasons.  First, "neither of the two counts in [her] complaint include[d] any mention of a hostile work environment."  *Green I*, 2022 WL 898864, at *5.  Second, the only alleged "harassment" described in the factual averments of her complaint occurred outside the forty-five-day window.  *Id.*  Third, in any event, Green failed "to explain how the various discriminatory acts she allege[d] in her complaint '[were] adequately linked into a coherent hostile [work] environment claim.'"  *Id.* at *6 (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)).  With respect to this final flaw in Green's complaint, the Court observed that it was far from "obvious, for example, how the denial of Green's requests for a work-issued cell phone in April 2018, June 2018 and September 2019 . . . relates to a 'hostil[e]' encounter with a Deputy Chief in October 2018," or how "those incidents relate to the alleged lack of a response . . . to [Green's] request for reconsideration of her 2019" performance appraisal.  *Id.*

The Court did conclude, however, that one event—and perhaps a second—was timely raised.  Most clearly, Green's allegation that the Park Service Human Resources Department failed to act on her December 2019 request for reconsideration of her 2019 performance appraisal was timely raised in the administrative process.  *Id.* at *7.  But the Court also assumed without deciding that her final request for a work-issued cell phone was timely raised, although the complaint failed to indicate at what point after September 2019 that request was, in fact, denied.  *Id.* at *6 n.3, *8.  As to both events, however, the Court concluded that Green had failed to allege facts sufficient to establish an adverse employment action, as required to state a claim under the ADEA.  *Id.* at *7–8.  In doing so, the Court relied on the D.C. Circuit's decision in

*Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999).  *See Green I*, 2022 WL 898864, at *7–8.  That

complicates things somewhat here, since the D.C. Circuit overruled *Brown v. Brody* in *Chambers*

*v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), and, although *Chambers* involved a Title

VII claim, this Court has held that the same rule governs in ADEA cases, *see Bain v. Office. of*

*the Attorney General*, --- F. Supp.3d ---, No. 21-cv-1751, 2022 WL 17904236, at *19 (D.D.C.

Dec. 23, 2022).  Complicating things further, still, Green's amended complaint drops her ADEA

claim, *see* Dkt. 13, and she has neither sought reconsideration in light of *Chambers* nor otherwise

demonstrated any interest in pursuing that claim.  For present purposes, then, and absent some

contrary indication from Green, the Court will assume that she has abandoned her age

discrimination claim.

  Of greater relevance to the pending motion, the Court dismissed Green's Title VII

retaliation claim for a different reason.  In particular, the Court concluded that the complaint

lacked any "allegations that establish a plausible nexus between the Park Service's failure to

respond to her December 2019 request for reconsideration of her 2019 [performance appraisal]

or the denial of her third request for [a] work-issued cell phone and any protected EEO activity

(assuming for present purposes, that she ever engaged in any protected activity)."  *Green I*, 2022

WL 898864, at *9 (first alteration in original).  The complaint, as the Court explained, was

"exceedingly thin in its support for the contention" that the one or two timely-raised, discrete

acts were taken in retaliation for any protected EEO activity.  *Id.*

  With respect to Park Service's failure to take action on her December 2019 request for

reconsideration of her 2019 performance appraisal, the Court explained, Green failed to "allege

that [the] decisionmaker had any reason to retaliate against [her]."  *Id.* at *10.  Notably, that

"request for reconsideration was not sent to her direct supervisors or to those who Green

contends were biased against her." *Id.*  Instead, it "was sent to [the] Park Police Human Resources Department, where it merely generated 'a generic email stating that the reconsideration request was received.'" *Id.* (quoting Dkt. 1 at 10 (Compl. ¶ 54)).  And, although "temporal proximity can . . . support an inference of causation," *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012), "the relevant events [were] separated by over a year," *Green I*, 2022 WL 898864, at *10.  In short, the complaint failed to allege any facts that might give rise to an inference of a retaliatory motive for failing to act on her request for reconsideration.

Finally, the Court concluded that the same flaw extended to Green's claim that the Chief Financial Operations Officer denied her September 2019 request for a work-issued cell phone due to retaliatory animus.  *Id.* at *9.  The complaint contained "no allegations that would permit the reasonable inference that the Chief Financial Operations Officer" rejected her request due to any retaliatory animus.  *Id.*  It contained no allegation, for example, supporting a contention that the Chief Financial Operations Officer held any retaliatory bias against Green or that she acted "at the behest of [an] allegedly biased employee"—that is, as a "cat's paw"—and it contained no allegation that would permit an inference of retaliatory motive based on temporal proximity.  *Id.*

Although the Court dismissed Green's original complaint, it offered her the opportunity to file an amended complaint addressing the defects identified in the Court's opinion.  *Id.* at *10.  In response, Green filed an amended complaint, which makes four groups of changes.  Dkt. 13.  First, she drops her ADEA claim and now focuses exclusively on her Title VII retaliation claim.  Second, in support of her retaliation claim, she now alleges that the complaint that she filed with the Park Service's Office of the Inspector General ("OIG") in November 2018 "was based in part on her gender," and, in particular, that she complained that the Deputy Chiefs Gregory Monahan and Stephen Booker "did not speak [to her] in the same manner [as] to male employees."  *Id.* at 8

(Am. Compl. ¶ 47).  Third, she now alleges that the "events and occurrences identified in" her complaint and amended complaint are reasonably linked into a single, hostile work environment claim that was "perpetrated by" Myers and Booker; that Booker was aware of these events; that Booker and Monahan were aware of her "husband's prior EEO[C] complaint" and were aware of her OIG complaint; and that she was "forced into retirement in December[] 2020 rather than continue to be subjected to hostile treatment by her co-workers and managers."  *Id.* at 10–11 (Am. Compl. ¶¶ 56–62).  Finally, she now clarifies that her Title VII retaliation claim is premised on four allegedly protected activities: a 16E complaint filed in October 2018, *id.* at 7–8, 11 (Am. Compl. ¶¶ 44–45, 65); "requests for reconsideration of her [employee performance appraisal plans]" in August 2018, November 2018, and December 2019, *id.* at 7–8, 10 (Am. Compl. ¶¶ 39–40, 55); an Equal Employment Opportunity Commission race discrimination charge that her husband filed in October 2015, *id.* at 3, 11 (Am. Compl. ¶¶ 18, 67); and the OIG complaint that she filed in November 2018, *id.* at 8, 11 (Am. Compl. ¶¶ 46, 66).

The Department moves to dismiss, arguing that none of these additions or clarifications cures the defects identified in *Green I*.  Dkt. 15.  The Court agrees and, accordingly, will dismiss the amended complaint.

## II.  LEGAL STANDARD

Both grounds on which the Department seeks dismissal—administrative exhaustion and failure to state a claim—are properly addressed as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 (D.D.C. 2008).  As the Department acknowledges, failure to exhaust under Title VII is an affirmative defense, as opposed to a jurisdictional prerequisite to suit.  *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016).  As a result, a

Title VII plaintiff is not required to plead exhaustion, and the defendant bears the burden of proof. *Id.* But, as with other affirmative defenses, the defendant may seek dismissal under Rule 12(b)(6) if "the facts that give rise to the [exhaustion] defense are clear from the face of the complaint." *Bajaj v. U.S. Dep't of Hous. & Urb. Dev.*, No. 21-cv-1149, 2022 WL 612598, at *4 (D.D.C. Mar. 2, 2022) (quoting *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 245 n.1 (D.D.C. 2018)).

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which requires that the Court "first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face,'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor must the complaint demonstrate that recovery is likely, so long as the facts alleged are "enough to raise a right to relief above the speculative level," *id.* at 555–56 (quotation marks omitted). In deciding a 12(b)(6) motion, the Court may consider only the complaint itself, documents attached to or incorporated by reference in the complaint, and judicially noticeable materials, including a plaintiff's EEO documents. *McIver v. Mattis*, 318 F. Supp. 3d 245, 249–50 (D.D.C. 2018).

### III.  ANALYSIS

The Department moves to dismiss Green's amended complaint on the same two grounds on which the Court previously dismissed Green's claims: failure to timely exhaust her administrative remedies, Dkt. 15 at 13–20, and failure to plead a plausible retaliation claim, *id.* at

20–34.  Beyond Green's decision to drop her ADEA claim, little has changed since *Green I*, and the same result holds.

A.       **Administrative Exhaustion**

"Before bringing Title VII . . . claims to court, federal employees must administratively exhaust their claims."  *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017).  To initiate the exhaustion process for a Title VII claim, a federal employee must contact her agency's EEO counselor within forty-five days of the allegedly discriminatory incident.  *See* 29 C.F.R. § 1614.105(a)(1); *Green*, 578 U.S. at 549–50.  A claim arising out of a "discrete discriminatory act[]" that is not brought to the attention of an EEO counselor within forty-five days of the act's occurrence generally cannot be pursued, even when the act is "related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 113.  The reason is that "[e]ach discriminatory act starts a new clock for filing charges alleging that act."  *Id.*

The rule is different, however, for hostile work environment claims, because a hostile work environment claim by its very nature "involves repeated [instances of] conduct" that can occur "over a series of days or perhaps years" and that "collectively constitute one 'unlawful employment practice.'"  *Id.* at 115, 117 (quoting 42 U.S.C. § 2000e–5(e)(1)).  As long as one of the acts that created the hostile work environment occurred within forty-five days of the employee contacting her EEO counselor, other acts that "are part of the same actionable hostile work environment practice" remain actionable with respect to that claim, even if they occurred outside of the forty-five-day period.  *Id.* at 120.

In *Green I*, the Court concluded that, given Green's concession that she "made *initial* contact with her EEO counselor" "[i]n or about January[] 2020," Dkt. 13 at 2 (Am. Compl. ¶ 6) (emphasis added), all but two of the allegedly discriminatory or retaliatory acts identified in her

complaint fell outside of the forty-five-day window before her initial EEO contact.  *Green I*, 2022 WL 898864, at *4.  Those acts, as noted above, included the Department's failure to respond to Green's December 2019 request for reconsideration of her 2019 performance appraisal, *id.*, and, possibly, the Department's rejection of her final request for a work-issued cell phone, which came "some time" after her September 2019 request.  *Id.* at *6 n.3.  That conclusion continues to hold, and, at least for present purposes, the Department does not argue otherwise.

Instead, the Department focuses its exhaustion argument on all of the other allegations of mistreatment contained in Green's amended complaint, none of which, according to the Department, were timely raised in the administrative process.  In the Department's view, then—with the exception of Green's claims that the Department never acted on her December 2019 request for reconsideration and that it denied her final request for a work-issued cell phone in retaliation for her protected EEO activity—the amended complaint should be dismissed for failure to exhaust.  Echoing the prior briefing on this issue, Green responds by arguing that she is not seeking to recover for discrete acts of retaliation but, rather, on a hostile work environment claim, which permits her to rely on earlier acts of harassment if they "form[] part of one indivisible discriminatory practice and at least one act in furtherance of that practice took place within the applicable charging period."  Dkt. 17 at 3.

The parties do not disagree about the relevant legal rule, nor could they.  Under settled Supreme Court and D.C. Circuit precedent, "incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve[] the same type of employment actions, occur[] relatively frequently, and [are]

perpetrated by the same managers.'"  *Baird*, 662 F.3d at 1251 (alterations in original) (quoting *Morgan*, 536 U.S. at 120–21).  The problem Green faces is that the Court previously concluded that she had failed "to explain how the various discriminatory acts she alleges in her complaint 'are adequately linked into a coherent hostile environment claim.'"  *Green I*, 2022 WL 898864, at *6 (quoting *Baird*, 662 F.3d at 1251).  Notably, the only two potentially timely actions at issue were made by different officials or employees than those who allegedly held meetings without her, failed to treat her with respect, foisted work on her, verbally attacked her, or conducted her 2018 and 2019 performance appraisals, or laughed at and shunned her.

The question for present purposes is whether Green's amended complaint provides additional factual allegations that cure this defect.  It does not.  The relevant additions are included in paragraphs 56–62 of the amended complaint.  Dkt. 13 at 10–11 (Am. Compl. ¶¶ 56–62).  Those new allegations, however, constitute little more than legal conclusions, merely parroting the legal standard described in *Green I*.  She alleges, for example, that "[t]he series of events and facts establish a hostile work environment involving repeated conduct that occurred over a period [of] nearly 3 years, constituting an unlawful employment practice on the basis of retaliation for engaging in prior protected activity," *id.* at 10 (Am. Compl. ¶ 57), and that the relevant events "involve the same type of adverse employment actions, occurred regularly and frequently and were all perpetrated by her co-workers, specifically Carolyn Myers and Deputy Chief Steven Booker," *id.* (Am. Compl. ¶ 58).  In large part, these are the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.  If anything, moreover, the few specific facts alleged in these paragraphs cut against Green's contention that her untimely claims are linked to those that were timely raised in the administrative process.  Most notably, she alleges

11

that the "adverse actions" at issue were "perpetrated . . . specifically [by] Carolyn Myers and Deputy Chief Steven Booker," Dkt. 13 at 10 (Am. Compl. ¶ 58), even though the amended complaint lacks any allegation tying Myers or Booker to the two timely (or possibly timely) events—the failure of Park Police Human Resources Department to act on her December 2019 request for reconsideration and the Chief Financial Operation Officer's rejection of her September 2019 (third) request for a work-issued cell phone.

The remaining, new allegations contained in Green's amended complaint are, if anything, even less helpful.  Green alleges that she "reasonably believes that Deputy Chief Booker was aware of each of [the allegedly retaliatory] aspects of [her] employment," *id.* (Am. Comp. ¶ 59), but she fails to offer any factual allegation supporting that conclusory belief and, even more importantly, she does not allege that the two timely (or possibly timely) events took place at Booker's instigation or with his involvement.  Nor does her allegations that Booker and Monahan were aware of her husband's EEO[C] complaint, which was filed over four years earlier, and that they were aware of her OIG complaint, which was filed a year earlier, help.  *Id.* at 10–11 (Am. Compl. ¶¶ 60–61).  Those allegations might support an inference that Booker or Monahan had reason to retaliate against her at some point in time, but, even putting aside the absence of any temporal proximity, *see Hamilton*, 666 F.3d at 1357, the amended complaint once again fails to answer the question left unanswered in Green's original complaint: how, if at all, the various, disparate acts of mistreatment that Green seeks to treat as a single, "coherent hostile environment claim" were linked together.  Absent an answer to that question, Green cannot use a hostile-work-environment theory to rescue the claims that she failed to exhaust in a timely manner.

One need look no further than Green's own opposition brief to understand the difficulty with her theory. As she herself puts it:

> In this case, Plaintiff identifies *three separate and distinct* patterns of behavior, beginning as early as 2017 through and including at least December 17, 2019 consisting of harassing and discriminatory events including [1] not receiving a force issued cell phone, [2] problems with her 2018 and 2019 [performance appraisals] and reviews thereof[,] and [3] her 16E charge against Booker and Monahan and the subsequent retaliation specifically related to that charge.

Dkt. 17 at 7 (emphasis added). "Separate and distinct," *id.*, patterns of behavior, by definition, are not "linked into a coherent hostile environment claim," *Baird*, 662 F.3d at 1251, and, thus, a decision declining to give Green a work-issued cell phone in late 2019, for example, cannot resuscitate claims relating to rude behavior, the assignment of excessive work, refusal to allow telework, or verbal attacks in 2018.

Moreover, even accepting Green's contention that her failed effort to obtain a work-issued cell phone and her efforts to correct her 2018 and 2019 performance appraisals should be treated as distinct "patterns of behavior," Dkt. 17 at 7, neither of these "patterns" is sufficient to state a claim for a hostile work environment. A hostile work environment claim requires more than a series of allegedly discriminatory acts. *See Bain*, 2022 WL 17904236, at *25; *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 138 (D.D.C. 2016) ("[C]ourts typically do not find . . . work-related actions by supervisors to be sufficient for a hostile work environment claim." (internal quotation marks omitted)). It requires a showing that the victim was subject "to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Absent aggravating circumstances not alleged here, the failure to receive a work-issued cell phone or receiving a marginally less favorable performance appraisal (i.e.,

receiving a 4 out of 5 as opposed to a 5 out of 5) does not come close to clearing this high hurdle. *See Brooks v. Grundmann*, 748 F.3d 1273, 1276–77 (D.C. Cir. 2014) (concluding that performance reviews that "recommended areas of improvement" were "hardly the stuff of severe or pervasive workplace hostility").

One final new allegation contained in Green's amended complaint bears brief mention. She now alleges that "[t]he hostile work environment was such that Plaintiff reasonably could not continue to work in that environment and she was constructively discharged by being forced into retirement in December 2020 rather than continue to be subjected to hostile treatment by her co-workers and managers." Dkt. 13 at 11 (Am. Compl. ¶ 62). That allegation does not provide a further basis for finding that a hostile work environment existed or for concluding that Green's various, disparate complaints of mistreatment can be tied together in one "coherent hostile environment claim." *Baird*, 662 F.3d at 1251. Rather, the allegation describes a purported *consequence* of the alleged hostile work environment. As such, the allegation does nothing to address the flaws detailed in *Green I* and, accordingly, provides no basis to sustain Green's otherwise insufficient claims.

The Court, accordingly, once again concludes that Green has failed to allege a hostile work environment claim sufficient to resuscitate her untimely claims of mistreatment.

## B.  Failure to State a Claim: 2019 EPAP Reconsideration and Cell Phone Request

In light of Plaintiff's failure to exhaust her hostile work environment claim, the Court considers Green's narrower claim that the Park Service retaliated against her when it failed to act on her September 2019 request to reconsider her 2019 EPAP and when it denied her third request for work-issued cell phone sometime after September 2019. Dkt. 13 at 11–12 (Am. Compl. ¶¶ 63–69).

In *Green I*, the Court concluded that Green failed to state a Title VII retaliation claim as to these two discrete acts because her complaint "contain[ed] no allegations that establish a plausible nexus between the Park Service's failure to respond to her December 2019 request for reconsideration of her 2019 EPAP or the denial of her third request for work-issued cell phone and any protected EEO activity." *Green I*, 2022 WL 898864, at *9.  In other words, Green failed to satisfy her burden of alleging "sufficient factual matter, accepted as true," to permit "the reasonable inference," *Iqbal*, 556 U.S. at 678, that the Department's improper motive "was the 'but-for' cause" of the challenged employment action, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013).

Green's amended complaint largely tracks her original complaint, with only a few additions.  She now alleges that her November 2018 OIG complaint against Booker and Monahan was "based in part on her gender," Dkt. 13 at 8 (Am. Compl. ¶ 47), and that she "reasonably believes that Deputy Chief Booker," who was named in her 2018 OIG complaint, "was aware of" her "denial of a force issued cell phone" and of "the failure to reconsider her" 2019 performance appraisal, *id.* at 10 (Am. Compl. ¶ 59).  Notwithstanding these additions, Green's amended complaint remains "exceedingly thin" in drawing a causal connection between any protected activity and the Department's rejection of her September 2019 request for a work-issued cell phone and failure to act on her December 17, 2019 request for reconsideration of her 2019 performance appraisal.  *Green I*, 2022 WL 898864, at *9.

Before considering the causal connection, the Court pauses briefly to address which of the allegedly protected activity enumerated in her amended complaint is, in fact, "protected" within the meaning of Title VII.  Green's amended complaint clarifies that, in addition to a 16E complaint filed in October 2018, Dkt. 13 at 7–8, 11 (Am. Compl. ¶¶ 44–45, 65), and "requests

for reconsideration of her EPAPs" in August 2018, November 2018, and December 2019, *id.* at

7–8, 10 (Am. Compl. ¶¶ 39–40, 55), her retaliation claims are premised on two activities that

were not specifically identified in her original retaliation claim (*see* Dkt. 1 at 11 (Compl. ¶¶ 63–

68)): her 2018 OIG complaint, which "was based in part on her gender . . . as she alleged that

Monahan and Booker did not speak [to her] in the same manner as to male employees," Dkt. 13

at 8, 11 (Am. Compl. ¶¶ 46–47, 66), and her husband's 2015 EEOC complaint against the Park

Police, which alleged race discrimination, *id.* at 3, 11 (Am. Compl. ¶¶ 18, 67).  Of the four

allegedly protected activities on which Green now bases her retaliation claim, however, only

these last two—the 2018 OIG complaint and her husband's 2015 EEOC complaint—"in some

way allege unlawful discrimination—that is, discrimination on the basis of a protected

characteristic."  *Dodson v. U.S. Capitol Police*, --- F. Supp. 3d ---, No. 18-cv-2680, 2022 WL

4598575, at *16 (D.D.C. Sept. 30, 2022) (quoting *Brady v. U.S. Capitol Police*, 200 F. Sup. 3d

208, 214 (D.D.C. 2016)).  Green nowhere alleges that either her various EPAP reconsideration

requests or her 16E complaint—which alleged "[h]arassment and [h]ostile [w]ork

[e]nvironment," *see* Dkt. 13 at 7 (Am. Compl. ¶ 44)—asserted that she was unfairly appraised in

her EPAPs or harassed because of her race, color, religion, sex, or national origin.  *Cf. Logan v.*

*Dep't of Veteran Aff's*, 404 F. Supp. 2d 72, 77 (D.D.C. 2005) (concluding that an EEO complaint

was not "protected" activity within the meaning of Title VII where the complaint had not alleged

discrimination on one of those bases).  The Court, accordingly, concludes that only Green's 2018

OIG complaint, which alleged sex discrimination, and her husband's 2015 EEOC complaint,[1]

---

[1]  For present purposes, the Court need not decide whether an EEOC complaint filed by Green's
husband would suffice to support a claim of retaliation against Green.  *Cf. Savignac v. Jones*
*Day*, 486 F. Supp.3d 14, 40–41 (D.D.C. 2020).

which alleged racial discrimination, are plausibly "'protected' within the meaning of Title VII." *Id.*

As before, the Court begins with the Department's rejection of her September 2019 request for a work-issued cell phone, which—unlike Green's previous cell phone requests—was made to the Chief Financial Operations Officer ("CFOO") for the Park Police.  Dkt. 13 at 5 (Am. Compl. ¶ 31).  Even with the amendments Green made to her complaint, her amended complaint says nothing about the CFOO, and it offers no basis to infer that she—either directly or as a "cat's paw," *see Coats v. DeVos*, 232 F. Supp. 3d 81, 88–89 (D.D.C. 2017)—held any retaliatory bias against Green.  It does not allege that the CFOO was aware of her 2018 OIG complaint or her husband's 2015 EEOC complaint.  It does not allege that the CFOO acted under the direction of Booker or Monahan or that they would have had any input (formally or informally) in the CFOO's decision whether to grant Green's request for a work-issued cell phone.  And it does not allege that the filing of her OIG complaint and the CFOO's rejection of her request for a cell phone occurred sufficiently "close in time" to support an inference of retaliatory motive. *Hamilton*, 666 F.3d at 1357 (citation and quotation marks omitted).  To the contrary, the CFOO made her decision about a year after Green filed her OIG complaint and roughly four years after Green's husband filed his EEOC complaint. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) ("Action taken . . . [twenty] months later suggests, by itself, no causality at all."). In short, the amended complaint contains no factual allegations that would support a plausible inference that the CFOO acted based on retaliatory animus, and it thus fails to state a claim relating to Green's September 2019 request for a work-issued cell phone. *See Iqbal*, 556 U.S. at 678.

The same analysis applies to Green's claim that she never received a response to her December 2019 request for reconsideration of the 2019 performance appraisal in retaliation for her 2018 OIG complaint and her husband's 2015 EEOC complaint.  Again, the relevant events are separated by over a year, and she does not allege that the relevant decisionmaker had any reason to retaliate against Green (or was influenced by someone who did).  As with her third request for a cell phone, Green's December 2019 request for reconsideration was not sent to her direct supervisors or to those who Green contends were biased by her 2018 OIG complaint or her husband's 2015 EEOC complaint.  Rather, that request was sent to Park Police Human Resources Department, where it merely generated "a generic email stating that the reconsideration request was received."  Dkt. 13 at 10 (Am. Compl. ¶ 55).  Green's amended complaint lacks any factual allegations that would permit a plausible inference that the Park Police Human Resources Department failed to act on her request due to any retaliatory animus.

Moreover, even if the Court were to conclude that the amended complaint cleared this hurdle, it stumbles at the next step, because it fails to allege facts sufficient to establish that either the denial of a request for a work-issued cell phone or the failure of the Human Resources Department to act on her request for reconsideration constitute materially adverse actions for purposes of a retaliation claim.  For purposes of a Title VII retaliation claim, a "materially adverse action" is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Chambers*, 35 F.4th at 876 (explaining that the court's conclusion as to Title VII's antidiscrimination provision is consistent with the prevailing interpretation of the antiretaliation provision in light of the "fundamental differences between the antidiscrimination and the antiretaliation provisions").  The standard is objective and captures only "significant,"

rather than "trivial harms." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.  "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (citations omitted).

As an initial matter, the Court notes that Green's opposition brief offers no response to the Department's contention that neither the cell-phone denial nor the failure to act on her request for reconsideration constitutes a materially adverse action.  *See* Dkt. 17.  "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017).  She, accordingly, has conceded the point.

But, even if the point was not conceded, the Court would conclude that the amended complaint fails to identify a material adverse action.  Notably, the amended complaint does not allege that the CFOO's decision declining Green's third request for a work-issued cell phone had any impact on her ability to perform her official duties or that work-issued cell phones were a "significant . . . benefit[]" of employment.  *See Bridgeforth*, 721 F.3d at 663.  And, according to the amended complaint, Green was able to receive work calls on her husband's Park Police cell phone.  Dkt. 13 at 3 (Am. Compl. ¶ 23).  Thus, at most, the fact that she did not receive her own work-issued cell phone was a minor inconvenience or slight that would not "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

The allegation that the Park Police Human Resources Department did not act on her December 2019 request for reconsideration of her 2019 performance appraisal presents a closer question, although only slightly closer.  In the retaliation context, letters of counseling and performance reviews typically do not constitute materially adverse actions absent some further "tangible job consequences," such as "financial harms" or impacts related to an employee's "position, grade level, salary, or promotion opportunities." *Baloch*, 550 F.3d at 1199 (quoting *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005)).  Conversely, if such acts do precipitate "tangible job consequences," *id.*, or create a predictable and direct prospect of such consequences, they might well "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination," which is all that is required for purposes of a retaliation claim, *Burlington N. & Santa Fe Ry. Co*., 548 U.S. at 68 (internal quotation marks omitted).

In dismissing Green's original complaint without prejudice, the Court noted that Green did allege that "one of her colleagues 'received a Level 5 Rating on her FY2019 [performance appraisal], which entitled [that colleague] to financial and time awards.'"  *Green I*, 2022 WL 898864, at *7 (second alteration in original).  The Court concluded, however, that this allegation fell short of "meeting the mark . . . because Green fail[ed] to allege that she would have (or would likely have) received those or similar awards had she received a better evaluation."  *Id.* Yet, tellingly, when provided the opportunity to amend her complaint, Green failed to address this omission in any way or otherwise to allege that she suffered (or likely suffered) any tangible consequence due to her four out of five rating.

Nor did Green address the second problem identified in *Green I*—that is, that she did not timely raise any objection to her actual performance appraisal in the administrative process and,

instead, merely objected to the failure of the Park Police Human Resources Department to act on her request for reconsideration.  *Id.* at \*8.  As the Court explained:

> But, even if Green alleged that she would have qualified to receive some tangible benefit if she had received a 5.0 rating, the claim at issue is not a challenge to the performance review itself; that claim is untimely. Rather, all that Green can challenge at this point is the agency's alleged failure to respond to her request for reconsideration, which she submitted to the Park Police Human Resources Department on December 17, 2019. . . . She does not allege, for example, that the Human Resources Department had a practice of correcting unfair evaluations (or even had authority to do so) or that, in December 2019 or January 2020, she could have still qualified for a financial award for her performance in 2019.  In short, she offers no factual basis to infer that, had the Human Resources Department reconsidered her 2019 [performance appraisal] in December 2019 or January 2020, she would have received some tangible benefit.

*Id.*  Again, Green was placed on notice of this gap in her complaint yet failed to make any effort to fill the gap in her amended complaint.

The Court will, accordingly, dismiss the only remaining portions of her retaliation claim for failure to state a claim.

## C.     Failure to State a Claim: Constructive Discharge

Finally, although not raised as a separate claim, the Court will consider Green's new allegation that she was constructively discharged.  Dkt. 13 at 11 (Am. Compl. ¶ 62).  To state a claim for constructive discharge, a plaintiff must make a showing "[b]eyond" that necessary to "[e]stablish [a] hostile work environment" claim.  *Penn. State Police v. Suders*, 542 U.S. 129, 133–34 (2004).  In particular, the plaintiff must "show . . . that the abusive working environment became so intolerable that her resignation qualified as a fitting response."  *Id.* at 134.  The mere existence of workplace discrimination or retaliation is "insufficient to make out a constructive discharge claim;" the claim requires "[a]ggravating factors" that "mak[e] the workplace so disagreeable [that they] prevent the reasonable employee from seeking remediation on the job." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006); *see also Richardson v. Petasis*, 160 F.

Supp. 3d 88, 137 (D.D.C. 2015) ("The analysis for a constructive discharge claim on the basis of retaliation mirrors the analysis in the discrimination context.").

Because Green has failed to state a hostile work environment claim, her related, constructive discharge claim fails as a matter of law. *See, e.g.*, *McKeithan v. Boarman*, No. 11-5247, 2012 WL 1450565, at *1 (D.C. Cir. Apr. 12, 2012) ("[T]he district court correctly determined appellant failed to state a claim of constructive discharge, because he failed to make out an underlying predicate claim of hostile work environment."); *Sewell v. Hugler*, No. 08-5079, 2009 WL 585660, at *1 (D.C. Cir. Feb. 25, 2009) ("[T]he failure of [plaintiff's] constructive discharge claim follows *a fortiori* from the failure of her [hostile work environment, discrimination, and retaliation] claims."). Nor can she make out a constructive discharge claim by conclusory reference to "harassment and unwanted conduct . . . from May to September 2018," Dkt. 13 at 4–5, 8 (Am. Compl. ¶¶ 29, 34, 48); "intimidating and threatening emails," Dkt. 13 at 7 (Am. Compl. ¶ 41); a "verbal[] attack[] by Deputy Chief Booker" on October 23, 2018, *id.* (Am. Compl. ¶ 43); or by allegation that Deputy Chiefs Monahan and Booker "sp[oke] to [her] . . . in a harsh and demeaning manner," *id.* at 8 (Am. Compl. ¶ 46). The Court need not accept such conclusory allegations of "harassment" as true without any factual basis from which the Court itself could conclude that these encounters were "harass[ing]," "intimidating," or "demeaning." *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Green's amended complaint fails altogether to describe what these "threatening" emails said, what kind of "unwanted conduct" she experienced from her coworkers, or how her conversation with Deputy Chief Booker constituted a "verbal attack." Perhaps most critically, Green fails to provide the Court with any factual basis to infer that these

allegedly hostile encounters—which all apparently date to 2018—made her "working environment" intolerable two years later, in December 2020, such that her resignation at that time qualified as an objectively "fitting response." *Suders*, 542 U.S. at 134.

To be sure, Green is not required, at this stage, to include "detailed factual allegations" in her complaint. *Twombly*, 550 U.S. at 555. But neither labels nor legal conclusions will suffice, and Green has failed to offer any factual allegations sufficient to "raise a right to relief" on her constructive discharge claim "above the speculative level." *Id.* The Court will, accordingly, dismiss her constructive discharge claim.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Department's motion to dismiss, Dkt. 15, is **GRANTED** and the amended complaint, Dkt. 13, is **DISMISSED**. Absent a showing of good cause, the Court will enter a separate order dismissing and terminating the case in 14 days.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

February 7, 2023